Sue Ann HUNTER, Marie Joyce Kotsonis, L. Fargo Richardson and The L. F. Richardson Foundation, Appellees,

v.

The UNITED STATES of America, Appellant.

No. 79–1870.

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1980.

Decided June 25, 1980.

Wm. S. Estabrook, III, Atty., Tax. Div., Dept. of Justice, Washington, D. C. (argued), Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews and Robert A. Bernstein, Washington, D. C., Ronald S. Reed, Jr., U.

S. Atty., Kansas City, Mo., on brief, for appellant.

Guy A. Magruder, Jr., Terrell, Van Osdol & Magruder, Kansas City, Mo., for appellee.

Before STEPHENSON and McMILLI-AN, Circuit Judges, and VIETOR,* District Judge.

STEPHENSON, Circuit Judge.

The United States appeals from the district court's[1] order granting the plaintiffs-appellees' motion for summary judgment. Judgment was entered in favor of the plaintiffs—the sole distributees and beneficiaries under the last will and testament of Lloyd F. Richardson, deceased—entitling them to obtain a refund of federal estate taxes which the district court ruled were erroneously assessed against them. On appeal the government argues that the district court erred in holding that proceeds from insurance policies on the decedent's life were not includable in his gross estate under I.R.C. § 2042(2), because decedent did not possess "incidents of ownership" in the policies. We affirm.

I.  Facts and Proceedings Below

The parties submitted an extensive stipulation of facts with their cross-motions for summary judgment. The district court presented a detailed summary of the facts from this joint stipulation, see *Hunter v. United States*, 474 F.Supp. 763, 764–65 (W.D.Mo.1979). We therefore only briefly outline the relevant facts.

Lloyd F. Richardson (Lloyd) purchased eleven insurance policies on his own life from the years 1943 to 1955. From 1944 to 1961, Lloyd transferred the ownership of his policies to his wife Hazle D. Richardson (Hazle). After the transfer of ownership, Hazle changed the beneficiaries of all the policies. She became the primary beneficiary and her children and her estate were named as succeeding beneficiaries.

On March 22, 1961, Hazle properly executed her last will and testament, which named Lloyd as both executor of her estate and trustee of a testamentary trust for the benefit of their children and grandchildren. On August 29, 1970, Hazle died and Lloyd was appointed executor of Hazle's estate by the county probate court, and the appointment lasted until his death on September 18, 1972. At the time of his death, Lloyd had not distributed the assets of the residuary estate to the testamentary trust nor had he assumed the duties of trustee under the terms of the will.

The only assets in the residuary estate other than the life insurance policies were 626 shares of stock in the Richardson Motor Company. Lloyd was president of this corporation which operated an automobile dealership. At the time of Hazle's death, she and her husband were the only shareholders in the corporation. All administration expenses, estate taxes, inheritance taxes and court costs relative to Hazle's estate were paid by the executors from non-probate assets. It is stipulated that there is no evidence that Lloyd exercised or attempted to exercise any incidents of ownership in the life insurance policies after Hazle's death.

After Lloyd's death, the value of the life insurance policies was not included in his gross estate on the federal estate tax return filed by Lloyd's estate. The Internal Revenue Service assessed an additional estate tax on the value of the insurance policies, which it concluded should be included in his gross estate. The estate paid the deficiency and brought this action seeking a refund.

The district court determined that Lloyd's powers both as executor and as designated trustee must be examined to determine if he possessed the requisite incidents of ownership in the insurance policies. The court determined that, for purposes of I.R.C. § 2042(2), Lloyd did not possess incidents of ownership in either capacity. The govern-

* The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa, sitting by designation.

1. The Honorable Russell G. Clark, United States District Judge for the Western District of Missouri.

ment appeals, alleging that (1) under the provisions of the will and Missouri law, Lloyd, as executor, possessed the necessary incidents of ownership; and (2) the fiduciary capacity he occupied as trustee included powers sufficient to qualify as incidents of ownership in the policies.

In addition to relying on the reasoning of the district court, appellees contend that Lloyd's powers as potential trustee are irrelevant and should not be considered because (1) at the time of his death Lloyd was not yet trustee of the residuary trust, and he did not possess the powers to become trustee; and (2) the policies would not have passed under Hazle's will to Lloyd as trustee.

## II. Incidents of Ownership under I.R.C. § 2042(2)

Like the district court in the instant case, we find it appropriate to consider Lloyd's capacity as executor and his capacity as potential trustee separately to determine if he possessed incidents of ownership in either capacity which would require inclusion of the value of the policies in his gross estate under I.R.C. § 2042(2).

I.R.C. § 2042(2) provides in relevant part that for estate tax purposes the gross estate of the decedent shall include the value of all property "[t]o the extent of the amount receivable by all other beneficiaries as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person."

The term "incidents of ownership" is not specifically defined in either the statute or regulations, although its meaning is discussed in some detail in Treas.Reg. (26 C.F.R.) § 20.2042–1(c)(2):

> For purposes of this paragraph, the term "incidents of ownership" is not limited in its meaning to ownership of the policy in the technical legal sense. *Generally speaking, the term has reference to the right of the insured or his estate to the economic benefits of the policy.* Thus, it includes the power to change the

beneficiary, to surrender or cancel the policy, to assign the policy, to revoke an assignment, to pledge the policy for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc.

### A. Powers as Executor

The government argues that as executor Lloyd possessed the power to enjoy economic benefits of the policies, and therefore possessed incidents of ownership. *See* Treas.Reg. § 20.2042–1(c)(2), *supra.* The relevant provision of the will states that the executor of Hazle's estate

> shall have and may exercise, as executor or substitute or successor executor, the same broad powers I confer on my husband in his capacity as trustee, in Section 5 of Article IV hereof, if or to the extent the conferring upon and exercising of such powers shall be appropriate to executorship and will be permitted by or will not be violative of applicable law; and each of them shall have the power also to sell any of the assets of my estate, in each instance at the property's value as shown in the inventory and appraisement of my estate filed in the Probate Court, and without the Probate Court's prior authorization or subsequent approval, or at such lesser price as the Probate Court may approve, and in either case to any person or persons whomsoever, including my spouse (even though he as executor may be dealing with himself in his individual and independent capacity) and children, in order to raise funds needed to pay death taxes and court costs and expenses of administration, or for any other proper purpose.

This provision, the government contends, gave Lloyd as executor the power to sell the policies at or below their full value to any person, including himself in his individual capacity. This capacity to "self deal," the argument continues, gives Lloyd the right to obtain economic benefits in the policies from his powers as executor.

The district court held that Missouri statutes and case law prohibit an executor from

self dealing despite permissive language in the will, subject to only one exception: upon the consent of all the distributees. *Hunter v. United States, supra,* 474 F.Supp. at 768. *See* Mo.Rev.Stat. §§ 473.-457(3), .477. *See also Earney v. Clay,* 516 S.W.2d 59 (Mo.App.1974).

■■■ We agree with the district court that "[a]lthough the ultimate question of 'incidents of ownership' is one of federal tax law, the decision may turn on state law. *Landorf v. United States,* 408 F.2d 461, 466, 187 Ct.Cl. 99 (1969)." *Hunter v. United States, supra,* 474 F.Supp. at 768. The above issue being governed by state law, the opinion of the local federal district judge that Missouri law prohibits self dealing except with the written consent of the distributees is entitled to great weight. *American Motorists Insurance Co. v. Samson,* 596 F.2d 804, 807–08 (8th Cir. 1979).

Even if the district court's interpretation of state law regarding this matter is accepted,[2] the government argues that the necessity of obtaining the consent of the distributees is irrelevant because section 2042(2) extends to any incident of ownership "exercisable alone or in conjunction with any other person." The district court responded that

[t]his argument fails in that the phrase "exercisable either alone or in conjunction with any other person" refers to the joint possession of incidents of ownership. That phrase contemplates the situation of joint ownership of a policy where the incidents of ownership are shared and does not refer to a situation where a single individual requires the consent of others before he is given the incidents of ownership. See, *Commissioner of Int.*

*Rev. v. Karagheusian's Estate,* 233 F.2d 197 (2nd Cir. 1956).

*Hunter v. United States, supra,* 474 F.Supp. at 768–69.

It is our view that this distinction made by the district court might lead to the "sanction [of] tax avoidance by means of insubstantial alterations in the forms of ownership." *Commissioner v. Karagheusian's Estate,* 233 F.2d 197, 200 (2d Cir. 1956). We need not decide this issue,[3] however, because we conclude that other restrictions on Lloyd's powers as executor prohibit him from exercising incidents of ownership of the policies under section 2042(2).

■■■ We begin by noting that mere possession by a decedent of powers in the nature of incidents of ownership held in a fiduciary capacity does not invariably require inclusion of the proceeds of the policies on the decedent's life in his gross estate. *Estate of Fruehauf v. Commissioner,* 427 F.2d 80, 85 (6th Cir. 1970). The district court held that Lloyd did not have the power as executor to sell these policies because under the terms of the will itself the power was exercisable only "to pay death taxes and court costs and expenses of administration, or for any other proper purpose." The court, relying on the reasoning of *Estate of Anders Jordahl,* 65 T.C. 92, 99–100 (1975), concluded that because the powers were exercisable only if necessary to pay the expenses, and this necessity never arose during Lloyd's term as executor, the decedent did not "possess" the powers in question.

■■■ The parties stipulated that administration expenses, estate taxes, inheritance

2. Our resolution of other issues makes it unnecessary to decide this question of state law.

3. We note that there may be little more than a semantical difference between Lloyd's needing the consent of the beneficiaries to be given the power to self deal, and his being granted outright the power to self deal, exercisable in conjunction with the consent of the beneficiaries. This latter power is clearly an incident of ownership, notwithstanding the fact that the other parties have an adverse interest. *Nance v.*

*United States,* 430 F.2d 662 (9th Cir. 1970); *Commissioner v. Karagheusian's Estate,* 233 F.2d 197 (2d Cir. 1956); *Goldstein's Estate v. United States,* 122 F.Supp. 677, 129 Ct.Cl. 264 (1954), *cert. denied,* 348 U.S. 942, 75 S.Ct. 363, 99 L.Ed. 737 (1955). *See Gesner v. United States,* 600 F.2d 1349 (Ct.Cl.1979); *United States v. Rhode Island Hospital Trust Co.,* 355 F.2d 7 (1st Cir. 1966). *But see Estate of Goodwyn v. Commissioner,* 32 T.C.M. (CCH) 740 (1973).

taxes and court costs relative to Hazle's estate were paid by the executors from non-probate assets. We agree with the district court that all Lloyd possessed in his capacity as executor at death was a power over a contingency which never arose—the need for cash to pay estate expenses. Therefore Lloyd as executor never had the *legal authority* to exercise incidents of ownership in the policies.[4] *Commissioner v. Noel Estate*, 380 U.S. 678, 683–84, 85 S.Ct. 1238, 1241, 14 L.Ed.2d 159 (1965) and *United States v. Rhode Island Hospital Trust Co.*, 355 F.2d 7 (1st Cir. 1966) do not require a different result. As stated by the district court:

> The cited cases both involved unexercised abilities to exert possessed powers or legal rights. Herein, decedent possessed the legal right to self deal only upon the express conditions found in the will and permitted under Missouri law. To possess an unexercised power as in the cited cases is distinguishable from the possibility of obtaining a power as executor which may or may not be exercised.

*Hunter v. United States, supra*, 474 F.Supp. at 770. *See Estate of Smith*, 73 T.C. No. 27 (Nov. 21, 1979); *Estate of Anders Jordahl, supra*, 65 T.C. at 100. *Cf. Estate of Margrave v. Commissioner*, 618 F.2d 34 (8th Cir. 1980) (proceeds of life insurance policy not included in decedent's gross estate under section 2042(2) where "there was never an instant when [decedent] possessed more than a mere power over an expectancy.").

We conclude that legal obligations imposed by the will and by Lloyd's fiduciary capacity as executor restricted his legal authority,[5] and he therefore did not possess incidents of ownership in the policies in his capacity as executor. *See* C. Lowndes, R. Kramer & J. McCord, Federal Estate & Gift Taxes § 13.7 at 332 (3d ed. 1974).

### B. *Powers as Designated Trustee*

Appellees contend that any incidents of ownership Lloyd may have possessed as designated trustee of the testamentary trust are irrelevant and need not be examined. This contention is based on the fact that none of Hazle's probate estate had been distributed at the time of Lloyd's death, and consequently Lloyd had not yet become the trustee of Hazle's residuary estate.

The district court concluded it must examine Lloyd's powers as potential trustee:

> Although Lloyd died before assuming the position of trustee of the testamentary trust, as executor he controlled the time and manner of distribution of the residuary estate assets to the trust. Therefore, although this Court has determined that as executor he did not possess the requisite incidents of ownership, his powers as potential trustee must also be examined.

*Hunter v. United States, supra*, 474 F.Supp. at 770. The district court acknowledged that under Missouri law it is well settled that

> the offices of executor and trustee do not merge, although they may be conferred upon and the powers of such offices be

**4.** Additionally, the terms of Hazle's will required the approval of the probate court for a sale at less than the full appraised value. This further legal restraint is important because we agree with appellee that a court is not a "person" as that term is used in section 2042(2) concerning possession of an incident of ownership, "exercisable either alone or in conjunction with any other person." *See* I.R.C. § 7701(a)(11) (defining "person" for purposes of the Internal Revenue Code).

**5.** Further restrictions limited Lloyd's powers as executor. The policies in issue on the life of Lloyd, who was 80 years old when appointed executor of Hazle's estate in 1970, had a total cash surrender value of approximately $70,000 at the time of his appointment as executor, and death benefits at Lloyd's death of approximately $148,000. The duty of Lloyd as executor is to act with the skill and care which prudent men exercise in the management of their own affairs. *In re Mills' Estate*, 349 Mo. 611, 162 S.W.2d 807, 813 (1942); *Kahmann v. Buck*, 446 S.W.2d 457, 460–61 (Mo.App.1969). Therefore even if a need to raise funds for estate expenses would have occurred, Lloyd's restricted fiduciary powers as executor would have made selling the insurance policies to himself improper, and therefore prohibited by the terms of the will.

exercised by the same person * * * But bequests of personalty go into the hands of the executor and do not become subject to any control by the trustee until there has been a legal separation of the funds. Until such separation the acts done in respect thereto are in the capacity of executor and not as trustee.

*Id.* at 766–67 (quoting *In re Jackson's Will,* 291 S.W.2d 214, 223 (Mo.App.1956)). Nevertheless, the court felt that *Estate of Fruehauf v. Commissioner, supra,* 427 F.2d at 85–86, required an examination of the powers held as trustee even though Lloyd had not yet been appointed. The district court quoted *Fruehauf* which had stated that under Michigan law

Decedent here had the power to become both trustee and life income beneficiary of the testamentary trust through the exercise of his powers as executor of the will. We believe that it is the existence of that power, not its exercise, which is determinative. Merely because decedent had not performed certain acts necessary to enable him to become trustee-beneficiary of the trust does not detract from his power to do so.

*Estate of Fruehauf v. Commissioner, supra,* 427 F.2d at 85, *quoted in Hunter v. United States, supra,* 474 F.Supp. at 767.

It appears that Missouri law differs from the Michigan law applied in *Fruehauf,* however. Apparently Lloyd could *not,* solely through his exercise of powers as executor, become trustee of the testamentary trust. Appellees argue that under Missouri law no distribution can be made by the executor except pursuant to an order from the probate court. *See* Mo.Rev.Stat. §§ 473.-613, .617; *see also Bohan v. United States,*

456 F.2d 851 (8th Cir. 1972), *aff'g,* 326 F.Supp. 1356 (W.D.Mo.1971). In the instant case Lloyd had not petitioned for, nor the probate court ordered, distribution of the assets of Hazle's estate before Lloyd's death. If the assumption of powers as trustee was contingent on court order, then we agree that Lloyd was not trustee at his death, nor did he have the power to effect his appointment as trustee "either alone or in conjunction with any other person," the probate court not satisfying the definition for "person." [6]

■ We need not rest our decision on this interpretation of state law, however.[7] An examination of Lloyd's capacity as potential trustee leads us to conclude the fiduciary powers possessed by Lloyd at death do not constitute an incident of ownership under section 2042(2).

The government acknowledges that the fiduciary powers possessed by Lloyd as trustee would permit him to affect only "the time and manner of enjoyment," and would not permit him to enjoy the economic benefits of the policies. It argues that this court should follow the approach of the Fifth Circuit, which has held that the insurance policies are nevertheless includable in the gross estate under Treas.Reg. (26 C.F.R.) § 20.2042–1(c)(4),[8] even though the decedent could not enjoy the economic benefits of the policies, but only the time and manner of enjoyment. *See Terriberry v. United States,* 517 F.2d 286 (5th Cir. 1975), *cert. denied,* 424 U.S. 977, 96 S.Ct. 1484, 47 L.Ed.2d 748 (1976); *Rose v. United States,* 511 F.2d 259 (5th Cir. 1975); *Estate of Lumpkin v. Commissioner,* 474 F.2d 1092 (5th Cir. 1973).

---

6. *See* note 4 *supra.*

7. Appellees also make the argument that the policies did not pass under Hazle's will to Lloyd as trustee. Instead, the appellees argue, Hazle intended the proceeds go to the beneficiaries outright, and never enter the residuary estate. They argue the policies should therefore be compared to specific bequests. Because of our resolution of other issues, we do not pass on this contention by appellees.

8. Treas.Reg. (26 C.F.R.) § 20.2042–1(c)(4) provides in relevant part:

A decedent is considered to have an "incident of ownership" in an insurance policy on his life held in trust if, under the terms of the policy, the decedent (either alone or in conjunction with another person or persons) has the power (as trustee or otherwise) to change the beneficial ownership in the policy or its proceeds, or the time or manner of enjoyment thereof, even though the decedent has no beneficial interest in the trust.

The district court relied on cases which held that—concerning the possession of fiduciary powers transferred to decedent after he had previously transferred all interest in policies on his life—the decedent must be able to enjoy economic benefits of the policies in order for them to be included in the decedent's gross estate under section 2042(2). *Estate of Connelly v. United States*, 551 F.2d 545 (3d Cir. 1977); *Estate of Skifter v. Commissioner*, 468 F.2d 699 (2d Cir. 1972); *Estate of Fruehauf v. Commissioner*, 427 F.2d 80 (6th Cir. 1970).[9]

We have examined these cases and the wealth of published comment concerning this issue, and find ourselves in complete agreement with the district court that the right to the economic benefits of a policy is necessary under these facts for inclusion in the gross estate. We therefore adopt the analysis and reasoning of the district court concerning this issue, see *Hunter v. United States, supra,* 474 F.Supp. 770–72.

Affirmed.

---

**9.** This is also the view of the tax court, *see, e. g., Estate of Anders Jordahl,* 65 T.C. 92, 100 (1975); *Estate of Hector R. Skifter,* 56 T.C. 1190 (1971), *aff'd,* 468 F.2d 699 (2d Cir. 1972); *Estate of Bert L. Fuchs,* 47 T.C. 199 (1966), and apparently has also been adopted by the Court of Claims, *Gesner v. United States,* 600 F.2d 1349 (Ct.Cl.1979) (finding that under Connecticut law trustees could benefit economically from the powers it held; the court stating its opinion is consistent with *Fruehauf* and *Skifter*).